IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

SAMINTHIA L. WARNER, )
 )
       Plaintiff, )
 )
v. ) Case No. CIV-07-168-RAW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
       Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Saminthia L. Warner ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 1, 1956 and was 49 years old at the time of the ALJ's decision. Claimant has extended her education in receiving a master's degree in social work. Claimant has worked in the past as a child welfare social worker for the Oklahoma Department of Human Services and at a hospice. Claimant alleges an inability to work beginning December 28, 2003, due to chronic pain, muscle spasms, insomnia, chronic depression and anxiety, poor memory, headaches, glaucoma, high cholesterol, GERD, pneumonia, and continual coughing.

## Procedural History

On May 21, 2004, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.). Claimant's application was denied initially and upon reconsideration. On August 29, 2006, a hearing was held before ALJ Edward L. Thompson in Ardmore, Oklahoma. By decision dated October 27, 2006, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On May 10, 2007, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as a social worker.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant suffered from a severe mental impairment at step two; (2) failing to properly consider Claimant's obesity at steps four and five; and (3) failing to engage in the three phases of evaluation at

4

step four.

**Claimant's Mental Status at Step Two**

Claimant contends the ALJ erroneously failed to find she suffered from a mental impairment at step two of the sequential evaluation process. In reviewing the medical evidence concerning Claimant's mental status, she submitted herself for a consultative examination on August 2, 2004 by Dr. Everett E. Bayne. Claimant complained of depression, stating she was taking antidepressant medication after a workers compensation injury in 2002. In December of 2003, Claimant began taking Zoloft, due to an increase in her depressive symptoms and anxiety. She stated she suffered from muscle spasms at night such that her sleep was disturbed. She alleges she can't hold her legs still. She can't stand to be around people and reports increased irritability and crankiness, reduced short term memory. Claimant had suicidal ideations at one time but states that she is "past that now." Claimant reported a psychiatric admission in 1983 for postpartum depression with suicidal ideation. Dr. Bayne found Claimant's symptoms affecting her sleep, appetite, memory, concentration, and energy were suggestive of depression. (Tr. 236).

Dr. Bayne diagnosed Claimant at Axis I – Major Depression Secondary to Chronic Illness; Axis II – Deferred; Axis III – Chronic Pain; Axis IV – Environment is a factor in symptom etiology; social, recreational, and employment ramifications; Axis V – Present LOF:

55. Dr. Bayne states Claimant's IQ appears to be greater than 80 and that she is employable. Claimant was found to be mentally competent to manage funds without assistance, appeared honest, and could improve with proper treatment within the next 12 months. (Tr. 237).

On July 30, 2004, Claimant was examined by a consultative physician, Dennis W. Brennan, D.O. With regard to Claimant's psychiatric status, Dr. Brennan found she suffers from "moderate to severe anxiety neurosis and clinical depression." Claimant reported that she underwent a psychiatric evaluation and went to the psychiatrist three times but did not care for the physician and did not return. Dr. Brennan noted Claimant had taken Zoloft in the past but had discontinued the medication on her own. (Tr. 217). Dr. Brennan concluded from his assessment that Claimant suffered from anxiety neurosis, moderate to severe and clinical depression, moderate. (Tr. 219).

A Psychiatric Review Technique form was completed on Claimant on September 9, 2004 by Hannah B. Swallow, Ph.D and reviewed by Dr. Sally Varghese. Dr. Swallow found no severe impairment. (Tr. 248). Dr. Swallow diagnosed Claimant with Depression due to Chronic Illness. (Tr. 251). To that end, Dr. Swallow found mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 258).

6

On March 14, 2006, Claimant was attended by Alex Wilson, P.A. Mr. Wilson noted Claimant suffered from depression and crying in addition to her physical ailments of fibromyalgia, chronic neck and back pain, and insomnia. Mr. Wilson states in the Attending Physician's Statement that Claimant is "unable to work for gain employment" and would never improve from her conditions. (Tr. 274).

Claimant's depression and anxiety were also diagnosed in the physician's notes of William H. Chesser, D.O. in visits made September 1, 2004, October 5, 2004, November 12, 2004, December 21, 2004, May 19, 2005, September 26, 2005, and October 6, 2005. (Tr. 280-287). Additionally, on November 17, 2004, Claimant was attended by Nancy A. Brown, D.O., a board certified rheumatologist. Dr. Brown concluded Claimant suffered from arthralgias, myalgias with sleep disturbance most probably fibromyalgia as well as marked depression and anxiety. Dr. Brown further reported that Claimant "really did not wish to work together," recommended counseling for Claimant and returned her to Dr. Chesser for further care. (Tr. 264).

At the administrative hearing, Claimant testified she had experienced an anxiety attack at work. (Tr. 305). She also testified that she was on mental health medication "off and on" throughout the 1980's when she experienced "lifestyle changes" such as the birth of her child, the divorce from her husband, and the death of a close friend. (Tr. 341). Most of her mental health

7

treatment was conducted outpatient. (Tr. 346). She had one incident of self admitting and self releasing inpatient care in 1981. (Tr. 354). She stopped taking medication around 1989 because "things were going really good for [her] then." (Tr. 342). Claimant went back on the medication in January of 2002 when she stepped in a hole and was involved in a car accident which resulted in physical injuries. (Tr. 342-343).

Claimant testified that Dr. Chesser recommended she not return to work after an anxiety attack in December of 2003. (Tr. 355). However, this directive not to return to work included both her mental and physical conditions. (Tr. 359). Prior to that time, Dr. Chesser had released Claimant to work. (Tr. 358). Claimant stated Dr. Chesser had felt because of her lack of sleep and dealing with pain, Claimant's personality had changed and she became aggressive with co-workers and hostile toward people and that this condition was one reason she should not return to work. (Tr. 362).

In his decision, the ALJ recognized the mild limitations set out in the report by Dr. Swallow and Dr. Varghese. He also noted the findings of Dr. Bayne and Dr. Brown concerning her level of functioning. However, the ALJ concluded that Claimant's mental condition did not significantly restrict her ability to perform basic work activities and, therefore, the condition was not severe. (Tr. 16-17).

At step two of the sequential evaluation, the claimant bears

8

the burden of making "a threshold showing that [her] medically determinable impairment or combination of impairments significantly limits [her] ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988). The step two determination is based on medical factors alone. Id. at 750. The claimant must make a "de minimus showing of medical severity" or the evaluation process ends, and benefits are denied. Id. at 751.

The evidence in the record which draws a connection between Claimant's mental condition and her ability to do basic work activities is limited. The evaluation of Dr. Swallow and Dr. Varghese and Claimant's testimony concerning Dr. Chesser's limitations represent the sole evidence in this regard. Drs. Swallow and Varghese's report shows only mild limitations upon her ability to work. Claimant reported an anxiety attack at work and Dr. Chesser's concern that her physical ailments were affecting her ability to work with people. Neither of these pieces of evidence discounts the ALJ's analysis and finding that Claimant's mental condition is not a severe impairment which affects her ability to perform basic work activities. As a result, this Court finds no error in the ALJ's decision concerning Claimant's mental condition.

**Evaluation of Claimant's Obesity**

Claimant next challenges the ALJ's consideration of her obesity as an impairment. In his decision, the ALJ found Claimant's obesity to be among her severe impairments. (Tr. 16). Further, he

9

discussed her body mass index and the fact that Claimant was obese under those guidelines. He concludes that "the claimant has significant restrictions in her abilities to perform work related activities, in part, as a result of obesity." (Tr. 17).

An ALJ is required to consider "any additional and cumulative effects" obesity may have upon other conditions from which a claimant suffers, recognizing that obesity combined with other impairments may increase the severity of the condition. Soc. Sec. R. 02-1p; 20 C.F.R. Pt. 405, Subpt. P, App. 1 § 1.00(Q)(combined effect with musculoskeletal impairments). "[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." Id. "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Each case is evaluated on information in the case record. Id.

The ALJ in this case evaluated the effect of Claimant's obesity upon her ability to engage in work-related activities. This Court cannot conclude that the ALJ's method of analysis was flawed requiring reversal.

### Step Four Analysis

In her final argument, Claimant contends the ALJ's step four analysis is deficient, alleging he did not engage in the required

three phase discussion of Claimant's ability to perform her past relevant work. The evaluation at step four has been determined to be comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental RFC. In the second phase, an ALJ must determine the physical and mental demands of a claimant's past relevant work. In the third and final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and physical limitations found in phase one. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(citations omitted).

In this case, Claimant is correct that the ALJ did not specifically delineate the three phases of step four. However, he is not required to adhere to such a rigid recitation. He must simply make the required specific factual findings required at each phase supported by substantial evidence. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).

As required by the first phase, the ALJ evaluated Claimant's RFC. He found from the evidence that Claimant retained the RFC to occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, walk or stand with normal breaks for a total of 6 hours in an 8 hour work day and sit about 6 hours in an 8 hour work day. (Tr. 17). These findings satisfy the requirements of the first phase.

With regard to the second phase, the ALJ concluded that

Claimant could perform her past relevant work as a social worker, stating "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." He further found "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (Tr. 19).

The record was developed on this issue through the Claimant's own hand. In her Work History Report, Claimant stated that the demands of her past social work required her to walk and stand one hour each per day and sit four hours per day. (Tr. 91, 99). These requirements meet the RFC developed and found by the ALJ. In this phase, the ALJ has a duty "of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." <u>Henrie v. United States Dept. of Health & Human Services</u>, 13 F.3d 359, 361 (10th Cir. 1993). The Tenth Circuit has recognized it is the development of the record for review rather than "needlessly constrain[ing] ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability" that was intended in requiring the findings at the three phases of step four. *See*, <u>Westbrook v. Massanari</u>, 2002 WL 193911, 5 (10th Cir.(N.M.))(unpublished opinion). In this case, the record was sufficiently developed for the ALJ to make the findings that the demands of Claimant's past relevant work did not

exceed Claimant's RFC.

For the third and final phase, the ALJ found Claimant could perform the demands of her past relevant work in light of her RFC. (Tr. 19). This finding is supported by the factual findings made within the ALJ's decision.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of September, 2008.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE